**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

**MIRANT DESAI**                                                                 **PLAINTIFF**

**V.**                                    **CASE NO. 5:25-CV-5099**

**WALMART, INC.**                                                            **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant Walmart, Inc.'s Motion to Dismiss for Failure to State a Claim (Doc. 43) and Brief in Support (Doc. 44), Plaintiff Mirant Desai's Response in Opposition (Doc. 45), and Walmart's Reply (Doc. 48). For the reasons explained below, the Motion is **GRANTED**.

## I.      BACKGROUND

Mr. Desai alleges in his Amended Complaint (Doc. 38) that Walmart, his former employer, discriminated against him based on his national origin,[1] subjected him to a hostile work environment, retaliated against him—after he was fired—by suing him in state court for violating his Non-Disclosure Agreement ("NDA"), and interfered with his contractual rights under the NDA because of his national origin, in violation of 42 U.S.C. § 1981.

Walmart recruited Mr. Desai in August 2023 to work on a project to enhance Walmart's profitability. *See* Doc. 38, ¶¶ 10–11. His performance evaluations in early 2024 were positive. *See id.* ¶ 12. However, in April 2024, he was wrongly blamed for a colleague's error, which he characterizes as "scapegoating." *See id.* ¶¶ 13, 59. In response, a supervisor "threatened disciplinary action" and "made a remark referencing

---

[1] Mr. Desai indicates in his EEOC Charge that his national origin is Indian. *See* Doc. 2-1, p. 1.

1

[Mr. Desai's] national origin in a derogatory manner." *Id.* ¶ 14. Sometime after that, Mr. Desai's "colleagues began making altered versions of [his] name in a derogatory way, also referencing his national origin and implying unemployment or lack of value." *Id.* ¶ 15. These comments were "unwelcome." *Id.* ¶ 16. At another point in time, Mr. Desai says "a supervisor and peers" made "intentionally worded remarks and comparisons referencing [his] national origin, phrased to imply foreignness and lack of belonging within the workplace culture." *Id.* ¶ 33.

On August 8, 2024, Walmart's CFO held a town-hall meeting where he "hinted at a workforce reduction." *Id.* ¶ 17. The following day, August 9, Mr. Desai was summoned to a meeting with his supervisor and "accused of communication issues and declining a meeting, accusations he disputes and believes were manufactured to justify adverse action." *Id.* ¶ 18. Just prior to that, Mr. Desai was blamed for "creat[ing] productivity issues for another team." *Id.* ¶ 19. He insists that this accusation "was exaggerated" and "arose from a trivial and routine interaction" with another colleague, *id.*, but admits that Walmart identified numerous other problems with his work, including: (1) "a processing lag in a large-volume spreadsheet formula," *id.* ¶ 34; (2) failing to meet a deadline for an "ad-hoc, time sensitive task"—though Mr. Desai maintains "the urgency surrounding the assignment was manufactured," *id.* ¶ 35; (3) "communication issues" that caused "discomfort" in his colleagues, *id.* ¶¶ 36, 41; (4) "anomalies" in Mr. Desai's "supplier-resolution work," *id.* ¶ 37; (5) "repetitive communications," *id.* ¶ 38; and (6) issues with his "professionalism and directness," which Walmart described as "negative traits," *id.* ¶ 41.

On October 29, 2024, Mr. Desai was advised that he had "six weeks to find another role within Walmart or be separated." *Id.* ¶ 20. He applied to more than ten positions within

Walmart but was never offered any interviews, which he blames on "an internal reputational campaign to erode his standing and foreclose reemployment opportunities." *Id.* ¶ 27. He was fired on December 20, 2024.

After his termination, Mr. Desai brought a timely charge of national origin discrimination with the Equal Employment Opportunity Commission. After receiving his right-to-sue-letter, he filed the instant lawsuit. Attached to the original complaint (Doc. 1) were several exhibits that Walmart believed contained confidential and proprietary information covered by Mr. Desai's NDA. Mr. Desai explains that he only attached those exhibits to his complaint to "demonstrate meritocracy in his career trajectory." *Id.* ¶ 9. He also admitted sharing these documents with a third party, the Stanford Business School, as part of an application he submitted for the school's leadership program. *See id.* Walmart's position was that the NDA prohibited Mr. Desai from taking copies of any of these documents with him after he was fired and from disclosing them to any members of the public—including in federal court filings on the public docket. Accordingly, Walmart moved to seal the exhibits from public view, and the Court granted the motion. *See* Doc. 7 (Motion to Seal); Doc. 11 (Text Order Sealing Exhibits). Shortly after that, Walmart sued Mr. Desai in state court for violating the NDA and the Arkansas Trade Secrets Act and committing the torts of misappropriation and conversion of a laptop.

In the instant federal suit, Mr. Desai brings claims for national origin discrimination under Title VII, a hostile work environment under Title VII, and the violation of 42 U.S.C. § 1981—because in Mr. Desai's opinion, the NDA permitted him to file confidential documents on the public docket, and Walmart's state court suit concerning the NDA was brought for discriminatory reasons related to his national origin.

3

## II.    LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A pleading containing mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and are "not entitled to the assumption of truth."). Instead, "[t]he complaint must allege facts, which, when taken as true, raise more than a speculative right to relief." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008).

## III.    DISCUSSION

### A.  Title VII National Origin Discrimination

It is black-letter law that an at-will employee may be fired for any reason, provided it is not a discriminatory one. *See Hill v. St. Louis Univ.*, 123 F.3d 1114, 1120 (8th Cir. 1997) ("Title VII [is] not meant to transform 'at will' employment into perpetual employment where equal treatment is guaranteed to all employees and termination is legal only 'for cause.'"). Furthermore, courts do not "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers." *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 977 (8th Cir. 2012) (citation omitted).

A review of Mr. Desai's Amended Complaint reveals that out of 95 paragraphs of

4

facts, only three—Paragraphs 14, 15, and 33—contain any references to national origin. The rest of the paragraphs either anticipate (and deflect) Walmart's critiques of Mr. Desai's job performance or explain why Walmart's state court suit was improper.

When assessing a Title VII claim at the pleading phase, "the elements of the prima facie case are not irrelevant to a plausibility determination"; rather, those elements, as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), "may be used as a prism to shed light upon the plausibility of the claim." *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021) (citation modified). "Through this prism, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests." *Id.* (citation modified).

A prima facie case of national-origin discrimination requires facts sufficient to show the employee was a member of the protected class, was qualified for his job, suffered an adverse employment action, and the circumstances give rise to an inference of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. The only facts in the Amended Complaint that allegedly give rise to an inference of discrimination are as follows: (1) in April 2024, eight months before Mr. Desai was fired, "a supervisor threatened disciplinary action and made a remark referencing [Mr. Desai's] national origin in a derogatory manner," (Doc. 38, ¶ 14); (2) Mr. Desai's colleagues made "altered versions of [his] name in a derogatory way" and "referenc[ed] his national origin" such as to imply his "lack of value" to the company, *id.* ¶ 15; and (3) on an unspecified date, "a supervisor and peers made intentionally worded remarks and comparisons referencing [Mr. Desai's] national origin, phrased to imply foreignness and lack of belonging within the workplace culture," *id.* ¶ 33. Based on these facts, Mr. Desai concludes "that discriminatory bias influenced

managerial perception" that he was not performing adequately and led to an "eventual termination" decision." *Id.*

First, the Court finds that the Amended Complaint fails to allege that Mr. Desai's "colleagues" and "peers" who made these remarks had any influence in the decisional process that resulted in Mr. Desai's termination. But even if they had, stray comments alluding to an employee's "foreignness" and "lack of belonging within the workplace culture"—though isolating—do not plausibly create an inference that a termination decision was motivated by discriminatory animus. The Eighth Circuit has carefully distinguished between comments "demonstrating discriminatory animus in the decisional process"—which are actionable—and "stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process"—which are not actionable. *Clearwater v. Indep. Sch. Dis. No. 166*, 231 F.3d 1122, 1126 (8th Cir. 2000). "Not all comments that may reflect a discriminatory attitude are sufficiently related to the adverse employment action in question to support . . . an inference [of discrimination]." *Walton v. McDonnell Douglas Corp.,* 167 F.3d 423, 426 (8th Cir. 1999). The Court concludes that in the case at bar, the stray remarks described in Paragraphs 15 and 33 do not plausibly support a prima facie case of national-origin discrimination.

Second, the supervisor's "remark referencing [Mr. Desai's] national origin in a derogatory manner," was uttered in April 2024, shortly after the supervisor "wrongly blamed" Mr. Desai for a "colleague's errors." (Doc. 38, ¶¶ 13–14). It follows that this remark—whatever it was[2]—occurred approximately eight months before Mr. Desai's

---

[2] Mr. Desai's Response to the Motion never discloses the derogatory remark. He claims "[t]he exact phrasing is a discovery issue." (Doc. 45, pp. 5–6).

6

termination. That fact substantially weakens the plausibility of there being a causal nexus between the remark and the termination decision. Moreover, as previously noted, a stray remark, "standing alone" without other circumstantial evidence, does not "give rise to an inference of discrimination" as a matter of law. *Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 922 (8th Cir. 2000). Mr. Desai points to no evidence other than the supervisor's unspecified remark to support a claim that he was fired because of his national origin, and therefore, the Title VII discrimination claim is **DISMISSED**.

### B.  Title VII Hostile Work Environment

Next, Mr. Desai contends he was subjected to a hostile work environment based on the workplace comments noted above. A prima facie case for hostile work environment requires facts to show that workplace harassment affected a term, condition, or privilege of employment. *See Hesse v. Avis Rent A Car Sys., Inc.*, 394 F.3d 624, 629 (8th Cir. 2005). According to the Eighth Circuit, the conduct "must be *extreme* to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (emphasis added). In evaluating a claim, courts must consider the totality of the circumstances, "including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* at 787–88.

Here, Mr. Desai points to a couple of "derogatory" references to his national origin, some isolating comments about his "foreignness" and lack of acceptance into the workplace culture, and an incident in which his name was said or spelled incorrectly which presumably insulted him. Assuming those facts are true, they fail to meet the level of

frequency or severity needed to allege a plausible hostile workplace claim. *See Burkett v. Glickman*, 327 F.3d 658, 662 (8th Cir. 2003) ("Offhand commands and isolated incidents of offensive conduct (unless extremely serious) do not constitute a hostile work environment."). This claim is therefore **DISMISSED**.

### C.  Violation of 42 U.S.C. §1981

Mr. Desai's § 1981 claim is difficult to understand. He insists that Walmart's state court lawsuit against him was motivated by national origin discrimination and somehow interfered with his ability to enforce and benefit from his NDA. Section 1981 assures that all persons "have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. §1981(a). But in general, § 1981 concerns discrimination on the basis of race or color and "does not authorize discrimination claims based on national origin." *Torgerson v. City of Rochester*, 648 F.3d 1031, 1053 (8th Cir. 2011).

Although it is true that in some cases, discrimination based on national origin may fairly equate to race discrimination, the instant case does not fit that mold. The Amended Complaint does not suggest that Mr. Desai experienced discrimination on the basis of race or color at Walmart; and, as noted above, he failed to state a claim for national-origin discrimination. Finally, Mr. Desai never explains how Walmart impaired his ability to make or enforce any contract, including his NDA, or impaired his ability to sue, give evidence, or enjoy equal benefit of the laws. The § 1981 claim is therefore **DISMISSED**.

### D.  Retaliation

Mr. Desai's last claim for Title VII/§ 1981 retaliation is also subject to dismissal. A

8

prima facie claim of retaliation requires facts to show: (1) the employee engaged in protected conduct; (2) the employer retaliated against him, and (3) the retaliation was causally linked to the protected conduct. *See Brenneman v. Famous Dave's of Am., Inc.*, 507 F.3d 1139, 1146 (8th Cir. 2007). Mr. Desai argues that he engaged in protected conduct by filing the instant federal lawsuit, and Walmart retaliated by filing suit against him in state court for breach of the NDA. However, the link between these two lawsuits is temporal rather than causal. Walmart first suspected that Mr. Desai had violated his NDA when he filed confidential and proprietary Walmart documents *in the federal suit on the public docket*. This was when Walmart concluded that Mr. Desai had retained the documents after he was fired—allegedly in violation of his NDA.

In addition, Mr. Desai challenged the propriety of the state court suit in a separate federal action. He accused Walmart of abuse of process, obstruction of justice, and the violation of his constitutional rights. *See Desai v. Walmart*, Case No. 5:25-CV-5190 (W.D. Ark.). The Court dismissed that case under Rule 12(b)(6), *see id.* (ECF 13), and the Eighth Circuit affirmed, *see id.* (ECF 20). For all these reasons, Mr. Desai's retaliation claim is **DISMISSED**.

### IV.    CONCLUSION

**IT IS ORDERED** that the Motion to Dismiss for Failure to State a Claim (Doc. 43) is **GRANTED**, and the case is **DISMISED WITHOUT PREJUDICE**.

**IT IS SO ORDERED** on this 13th day of April, 2026.

_____
TIMOTHY L. BROOKS
CHIEF UNITED STATES DISTRICT JUDGE

9